D. Craig Parry
cparry@parrbrown.com
**PARR BROWN GEE & LOVELESS**
101 S 200 E STE 700
SALT LAKE CITY, UT 84111
(801) 532-7840

Ali S. Razai (*Pro Hac Vice*)
ali.razai@morganlewis.com
Benjamin J. Everton (*Pro Hac Vice*)
ben.everton@morganlewis.com
Christian D. Boettcher (*Pro Hac Vice*)
christian.boettcher@morganlewis.com
**MORGAN LEWIS BOCKIUS LLP**
600 Anton Blvd #1800
Costa Mesa, CA 92626
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff Hydrafacial LLC*

Brent O. Hatch (5715)
Adam M. Pace (14278)
**Hatch Law Group PC**
22 E. 100 S., Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 869-1919
hatch@hatchpc.com
pace@hatchpc.com

Lauren A. Degnan (*pro hac vice*)
Joseph V. Colaianni (*pro hac vice*)
Linhong Zhang (*pro hac vice*)
April Sunyoung Park (*pro hac vice*)
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
degnan@fr.com
colaianni@fr.com
lwzhang@fr.com
apark@fr.com

*Counsel for Defendant Eunsung Global Corp.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HYDRAFACIAL LLC, formerly known as EDGE SYSTEMS LLC,<br><br>Plaintiff,<br><br>v.<br><br>LUVO MEDICAL TECHNOLOGIES, INC., CLARION MEDICAL TECHNOLOGIES, INC., EUNSUNG GLOBAL CORP., and HEALTHCARE MARKETS, INC. doing business as POWERED BY MRP,<br><br>Defendants. | **JOINT MOTION FOR SCHEDULING ORDER**<br><br>Case No.  2:24-cv-00587-TC-JCB<br><br>Judge: Hon. Tena Campbell<br>Judge: Hon. Jared C. Bennett |

Plaintiff HydraFacial LLC, formerly known as Edge Systems LLC ("Plaintiff or HydraFacial") and Defendant Eunsung Global Corp. ("Defendant or Eunsung") (collectively, the "Parties") jointly move for a scheduling order pursuant to the Court's minute order dated April 24, 2025, Dkt. 58. The parties met and conferred on a proposed scheduling order on May 1, 2025. As Defendant has not yet responded to the Complaint, Dkt. 1, the Parties have included dates for Defendant to respond to the Complaint. The Parties each propose their schedules found in the Proposed Scheduling Order attached hereto as **Exhibit A**. The Parties have differing proposals as to three items: (1) the dates for the schedule, (2) whether the May 1, 2025 meeting of counsel commenced discovery, and (3) the maximum number of requests for production and requests for admission to be served by each party.

## I.   ARGUMENT

### A.   Disputes Over the Schedule

#### 1.   Plaintiff's Position

Plaintiff filed its Complaint on August 16, 2024. Dkt. 1. The Court stayed this case in its entirety on October 3, 2024 due to parallel ITC investigations involving the defendants. Dkt. 41. On April 16, 2025, Plaintiff filed a motion to reopen the case, and the Court ordered a status conference for April 24, 2025. Dkt. 54.

During an April 24, 2025 status conference, HydraFacial's counsel notified the Court that the ITC investigations had been terminated as to all the defendants, including Eunsung. On that same day, the Court reopened the case and lifted the stay. Dkt. 56. During the status conference, Defendant Eunsung argued that the stay should remain in place due to petitions for *inter partes* review (IPRs) that have been filed to challenge the validity of some of the asserted patents. The Court rejected Defendant's arguments to maintain the stay in view of the pending IPR petitions and lifted the stay. The Court instead requested that the parties submit a proposed scheduling

order that addresses the August 25, 2025 IPR institution decision date.  With the case reopened and the stay lifted, this case should proceed without further delay.  Defendant should respond to the Complaint within 28 days of the Court lifting the stay.

Plaintiff's proposal aligns with the Federal Rules.[1]  Federal Rule of Civil Procedure 12(a)(1)(A)(1) states that "[a] defendant ***must*** serve an answer … within 21 days after being served with the summons and complaint." (emphasis added).  This timeframe for responding to a complaint ensures that the parties comply with the purpose of the Federal rules in "secur[ing] the just, ***speedy***, and inexpensive determination of ***every*** action and proceeding.  Fed. R. Civ. P. 1 (emphases added).  Defendant has been aware of the claims asserted by Plaintiff for more than eight months, and Plaintiff is willing to provide Eunsung an additional week to formulate its response.  Defendant has had far more time to contemplate and prepare a response to the Complaint than a typical defendant.

On the other hand, Defendant's proposal is contrary to the Federal Rules, Local Patent Rules, and legal precedent.  By requesting 30 days from the submission of a scheduling order before responding to the complaint, Defendant is attempting to delay discovery and all the subsequent dates in the case.[2]  Defendant's proposed schedule is improper.

---

[1] Plaintiff's proposal also aligns with the Court's order to account for the pending IPRs.  Plaintiff understands that the Court's request refers to notifying the Court regarding the institution decisions when they are issued.  The Court did not request that the parties stay or delay any portion of the case until issuance of the institution decisions.  Thus, Plaintiff proposes a date by which the parties will notify the Court as to the status of the IPR institution decisions.

[2] There are four pending IPR petitions challenging four of the six patents asserted in this litigation: IPR2025-00445 (concerning U.S. Patent No. 9,550,052); IPR2025-00145 (concerning U.S. Patent No. 11,865,287); IPR2025-00452 (concerning U.S. Patent No. 12,053,607); and IPR2025-00453 (concerning U.S. Patent No. 11,446,477).

Defendant also manipulates the deadlines provided in the local patent rules to introduce even more delay. Instead of following the form patent scheduling order from the local rules, Defendant arbitrarily proposes a "week 1" date that is actually 25 days out from their proposed answer date. Instead of proposing a deadline for Plaintiff's Accused Instrumentalities Disclosure in compliance with Local Patent Rule 2.1—which must be "[n]o later than 7 days after the defendant files its answer"—Defendant violates this rule by proposing a date 25 days after its proposed answer date. Because Defendant unnecessarily extends this first date, the rest of Defendant's proposed dates are also delayed. This attempt to delay the schedule should be rejected.

Defendant admits that its schedule would impose unequal burdens upon itself and HydraFacial. Defendant seeks to align Plaintiff's date for providing infringement contentions with the institution date, which would leave Defendant's responsive positions due three weeks later. Defendant admits it would seek to stay the case after the PTAB's institution decision (if the IPRs are instituted), which would leave the parties on vastly unequal footing: Defendant would have all of HydraFacial's infringement contentions for formulating responsive contentions and claim construction positions during any stay without HydraFacial having the benefit of Defendant's contentions for a similar purpose. HydraFacial's proposed schedule would not suffer any of these deficiencies; each side would prepare and serve initial contentions, and the parties would be on equal footing should the Court find a stay is required.

Defendant also uses its position statement to essentially argue that the IPRs will be instituted, and thus, there is no issue delaying the proceedings. Defendant's arguments fail for multiple reasons. *First*, the sole petition for which an institution decision has issues was **not instituted**. Defendant incorrectly argues that "Although Plaintiff had urged the PTAB to deny

Eunsung's '287 patent IPR petition on discretionary grounds, Plaintiff notably made no such argument against Sinclair's virtually identical IPR petition."  Contrary to Eunsung's arguments, HydraFacial informed the PTAB that Defendant's IPR petition is "substantively identical" to the petition currently pending on the '287 Patent, and thus, HydraFacial specifically requested that "the Board treat both Petitions consistently."  IPR2025-00145, Paper 11 (March 12, 2025).

*Second*, there are no pending IPR petitions for two of the asserted patents and the issues relating to those patents would not be simplified by any instituted IPRs.  Those two patents, while genealogically related, have very different claims than the patents for which there are IPR petitions filed.  *Compare, e.g.*, Dkt. 1-3 at 42 ("A tip configured for use in a skin treatment system, comprising") *with* Dkt. 1-4 at 44 ("A skin treatment system comprising").  Defendant does not explain how patents covering tips and patents covering systems should be treated identically.  Further, there are substantive differences between the claims of the four patents, and the validity of each claim is statutorily independent. 35 U.S.C. § 282 ("Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims.").  Eunsung does not analyze any of the claims in assuming the IPRs will be instituted.

Defendant also relies on the Fed. R. Civ. P. 26(f) conference date in the form patent scheduling order as supporting a delayed schedule.  But Plaintiff's proposed schedule avoids unnecessary delay by scheduling the Rule 26(f) conference one week after the proposed answer date and two weeks before the first set of initial disclosures.  *See* Exhibit A.  This schedule comports with the Federal Rules.  Fed. R. Civ. P. 26(a)(1)(C) ("A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order.").  Plaintiff's proposal also resolves the odd situation where the

parties hold a 26(f) conference after initial disclosures which, by federal rule, must discuss "what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made."  Fed. R. Civ. P. 26(f)(3)(A).

## 2.   **Defendant's Position**

As instructed by the Court, Eunsung's proposed schedule "accounts for the pending petitions for inter partes review (IPR), for which decisions are due by August 25, 2025."[3]  Dkt. 56.  As discussed at the April 24, 2024 status conference, Eunsung has filed petitions for *inter partes review* ("IPR") before the Patent Trial and Appeal Board ("PTAB") for four of the patents-in-suit[4] and third parties, Sinclair Pharma Limited, Sinclair Pharma US, Inc., Aesthetic Management Partners, Inc., Aesthetic Management Partners, LLC, EMA Aesthetics, Ltd, and Viora Inc. (collectively, "Sinclair"), filed an IPR petition for the '287 patent using the same prior art and arguments that Eunsung used in its IPR petition:

| Date | Activity |
|---|---|
| September 30, 2024 | Eunsung filed Petition IPR2024-01491 for the '287 patent |
| November 25, 2024 | Sinclair filed a petition IPR2025-00145 for the '287 patent |
| January 14, 2025 | Eunsung filed Petitions IPR 2025-00453, IPR2025-00452, IPR2025-00445 for the '477, '607, and '052 patents, |

[3] Defendant's proposed "week 1" is set to start on June 30, 2025, instead of June 12, 2025, to account for the pending petitions for inter partes review (IPR), for which decisions are due by August 25, 2025, as instructed by the Court.  As explained in the joint motion, Eunsung proposes that its Non-Infringement, Ineligibility, Invalidity, and Unenforceability Contentions should be due on September 15, 2025, three weeks after August 25, 2025.  Under the local rules, this deadline corresponds to "week 11."  Eunsung's schedule therefore sets the dates before this deadline in accordance with cadence set forth under the local rules, which makes "week 1" June 30, 2025.

[4] The patents-in-suit are:  U.S. Patent Nos. 11,865,287 ("the '287 patent); 9,550,052 ("'052 patent"); 10,357,641 ("'641 patent"); 10,357,642 ("'642 patent"); 11,446,477 (the "'477 patent"), and 12,053,607 (the "'607 patent").  The six patents are all genealogically-related to each other, through continuation applications, and they share the same specification.

| Date | Activity |
|------|----------|
| | respectively |
| April 11, 2025 | PTAB denied institution of Eunsung's IPR petition for the '287 patent |
| May 11, 2025 | Deadline for Eunsung's request for Director Review challenging the PTAB's decision denying the '287 IPR petition |
| June 12, 2025 | Deadline for Institution Decision on Sinclair's IPR petition for the '287 patent |
| August 25, 2025 | Deadline for Institution Decisions on Eunsung's IPR petitions for the '477, '607, and '052 patents |

Although the PTAB denied institution of Eunsung's IPR petition for the '287 patent, the PTAB stated that Eunsung's arguments that all of the patent's claims would have been obvious over the prior art identified in the petition met the standard for institution of an IPR proceeding. IPR2024-01491, Paper No. 17 (PTAB April 11, 2025) ("Institution Decision") at 16 ("We find that Petitioner's obviousness challenges meet the standard for institution."), **Exhibit B**. The PTAB denied institution under its discretionary authority because, *inter alia*, Plaintiff had asserted the '287 patent against one of Eunsung's customers in an ITC investigation and that customer had also challenged the validity of the '287 patent claims. Institution Decision at 14 ("[I]nvalidity arguments being made at the ITC [by Cartessa] indicates the same prior art is being asserted, resulting in substantial overlap with the art and arguments being asserted in the Petition . . . . Thus, this factor weighs in favor of exercising discretion to deny institution."). Eunsung intends to ask the Director of the Patent and Trademark Office to review this denial. The deadline for that request is May 11, 2025.

Although Plaintiff had urged the PTAB to deny Eunsung's '287 patent IPR petition on discretionary grounds, Plaintiff notably made no such argument against Sinclair's virtually identical IPR petition. Plaintiff waived its right to file a Patent Owner's Preliminary Response against Sinclair's petition. IPR2025-00145, Paper 11 (March 12, 2025). Furthermore, Plaintiff cannot make the same arguments that it made based on the ITC investigation pending against an

Eunsung customer, because the same facts do not apply to Sinclair. The deadline for the PTAB to issue its institution decision on Sinclair's petition is June 12, 2025. The deadline for the PTAB to issue its institution decisions on Eunsung's IPR petition for the '477, '052, and '607 patents is August 25, 2025.

Eunsung's proposed schedule accounts for the pending petitions for IPR and Eunsung's soon-to-be-filed Request for Director Review by setting the deadline for Eunsung to serve Initial Non-Infringement, Ineligibility, Invalidity, and Unenforceability Contentions *for three weeks after August 25th*—i.e., September 15th. That way, there would be an opportunity to move to stay the case after the PTAB's institution decision and thus avoid the significant burden and expense of discovery on claims subject to IPR. *See* Dkt. 56 at 1-2.[5] Because all six patents-in-suit are genealogically-related to each other and share a common specification, the IPR proceedings for any one of the patents will likely simplify the issues for not only the patent subject to IPR proceeding, but also the five other patents-in-suit as well. *See, e.g.*, Dkt. 39 at 2-6.[6] The remainder of the deadlines otherwise conform to this Court's Local Rules for Patent cases by assuming September 15, 2025 corresponds to "Week 11" under those rules.

---

[5] During the meet and confer, Eunsung offered to stage the deadlines such that Plaintiff's deadline to serve Accused Instrumentalities Disclosures and Initial Infringement Contentions would occur after the August 25, 2025 deadline, but Plaintiff rejected such a schedule. In the spirit of compromise, Eunsung does not oppose an earlier deadline for Plaintiff's contentions, as long as Eunsung's contentions are due at least three weeks after the deadline for the PTAB to act on Eunsung's pending IPR petitions, as Eunsung proposes.

[6] Because Eunsung already explained the significant overlap between the claims in all the patents-in-suit, Eunsung will not repeat the arguments therein in response to Plaintiff's incorrect argument that the asserted patents "have very different claims than the patents for which there are IPR petitions filed." Rather than brief the merits of a future stay motion here, Eunsung will address the issue after the PTAB rules on all pending IPRs.

Plaintiff's complaints about alleged "unequal burdens" and "unequal footing" ignore that Eunsung initially proposed a schedule under which Plaintiff would avoid the significant burdens of discovery until after the PTAB ruled on the pending IPR petitions. Having rejected that offer, Plaintiff cannot legitimately complain about choosing to proceed with its infringement contentions before August 25, 2025. Eunsung has no objection to Plaintiff's Infringement Contentions being after August 25, 2025, with the rest of the proposed schedule adjusted accordingly. Eunsung's proposed schedule allows the case to proceed through its earliest stages (initial disclosures—and Plaintiff's Infringement Contentions because it chooses to make them) promptly while providing the opportunity for the parties and the court to avail themselves of the efficiencies that would arise from a stay pending resolution of instituted IPRs. Because the difference between the parties' competing schedules is less than six weeks,[7] Plaintiff will not suffer any undue delay. Eunsung's approach strikes an appropriate and reasonable balance.

Similarly, Eunsung's schedule defers the start of discovery until after Eunsung responds to the complaint and the parties exchange initial disclosures contemplated by the Local Patent Rules. After these exchanges, the parties may hold an informed Rule 26(f) conference. Eunsung maintains that the parties have not held a Rule 26(f) conference or an Attorney Planning Meeting and their meet and confer over the joint proposed schedule, as ordered by the Court, was not the required Rule 26(f) conference or Meeting. For example, the parties have not met and conferred on the requirements for a protective order in the case and continue to have disputes over discovery limits. With further information from Eunsung's response to the complaint and both parties' initial disclosures, the parties may come to complete agreement on the discovery issues.

---

[7] Under Eunsung's proposed schedule, Initial Non-Infringement, Ineligibility, Invalidity, and Unenforceability Contentions would be due September 15, 2025, whereas under Plaintiff's they

Therefore, Eunsung's proposed schedule includes a deadline for the Rule 26(f) conference and for submitting a Stipulated Protective Order and, if there are any provisions of the protective order on which the parties cannot agree, any such disputes to the Court. This approach ensures an orderly and efficient schedule for discovery.

Finally, the parties dispute the deadline for Eunsung's response to Plaintiff's complaint. Because the Court stayed this case very early in the case—almost four months before Eunsung's answer would have been due, Dkt. 16, a modest extension would afford Eunsung adequate time to investigate Plaintiff's claims before preparing its response. Therefore, Eunsung asks that its response to the complaint be due 30 days from today—June 5, 2025.

**B.    Whether Discovery Can Commence After the May 1, 2025 Meeting of Counsel**

**1.    Plaintiff's Position**

The District of Utah has local patent rules that govern the procedure of patent cases. Relevant to this dispute is Local Patent Rule 1.2 entitled "ATTORNEY PLANNING MEETING AND SCHEDULING ORDER," during which parties "discuss those matters found in the form patent scheduling order on the court's website." LPR 1.2(a). This rule relates directly to Local Patent Rule 1.3, entitled "FACT DISCOVERY," which states that "[t]he parties may commence fact discovery on the date for the Attorney Planning Meeting." LPR 1.3(a). On April 24, 2025, the Court ordered the parties to "to file a motion for a scheduling order by 5/6/25." Dkt. 56. The Parties met on May 1, 2025 and discussed each of the matters in the form patent scheduling order in preparation for filing the present motion with the proposed scheduling order. Eunsung does not identify any subject matter needing discussion in the form patent scheduling order that the parties did not discuss. This meeting was an attorney planning meeting that satisfied all the

_____

would be due August 7, 2025.

requirements of LPR 1.2(a) and thus, pursuant to LPR 1.3(a), opened fact discovery such that the parties can begin serving discovery.

Nothing in the federal or local rules requires an answer from Defendant before discovery commences.  The only applicable rule reads: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except … when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  The Court's order requiring the parties to have an Attorney Planning Meeting, which satisfies the conditions for commencing discovery under the Local Patent Rules, fits the exception of Rule 26(d).  Plaintiff has already sought a Rule 26(f) conference with Defendant's counsel and will continue to pursue such a conference as soon as possible to discuss other discovery issues.  Further, there is no harm in seeking discovery at this juncture, as the parties have already engaged in discovery in other forums without issue as to fundamental procedures (e.g., document formatting, ESI production, privilege issues), and both parties may seek discovery on at least the claims in the Complaint.

### 2.    Defendant's Position

According to the Court's order to meet and confer on the proposed scheduling order, the parties met and conferred on May 1, 2025 to discuss the proposed schedule and the items that are included in the proposed scheduling order.

The meet and confer did not constitute a Rule 26(f) conference or an Attorney Planning Meeting that would commence the beginning of discovery.  As an initial matter, Eunsung has not filed a response to Plaintiff's complaint and the parties are seeking clarity on the nature of the meet and confer in this motion.  Under LPR 1.2, "[n]o later than 35 days after the filing of the first answer, the parties must hold an Attorney Planning Meeting and discuss those matters found in the form scheduling order on the court's website."  According to LPRs 2.1 and 2.2, Plaintiff's

Accused Instrumentalities, Plaintiff's Initial Disclosures, and Defendant's Initial Disclosures are dues in 7 days after defendant files its answer, 21 days after defendant files its answer or plaintiff files an answer to a counter claim, and 28 days after defendant files its answer or plaintiff files an answer to a counter claim, respectively.  Here none of those disclosures or filings that are made before the beginning of fact discovery has been made at this time.

In addition, as discuss above, the parties have not met and conferred on the requirements for a protective order or any discovery plan including the discovery subjects, whether discovery will be conducted in phases, whether discovery will be limited to or focused on particular issues, or how to handle electronically stored information.  Such discussions are premature at this stage given that the parties have not even made any initial disclosures.  Furthermore, Plaintiff does not dispute that the items that would be discussed for the purposes of the Attorney Planning Meeting Report, including claims and defenses, date in which Fed. R. Civ. P. 26(f)(1) Conference was held, discovery plan regarding necessary subjects, phases, and electronically stored information, expert reports, or trial logistics including whether to seek a bench or jury trial, and for how many days have not been discussed.  Eunsung's proposed schedule, which is consistent with the Court's template, includes a deadline for the Rule 26(f) conference, the beginning of discovery, and an attorney planning meeting report date for submitting a Stipulated Protective Order and, if there are any provisions of the protective order on which the parties cannot agree, any such disputes to the Court.

Without a response to the Complaint, disclosure of the Accused Instrumentalities, and the parties' initial disclosures, it is premature to begin discovery, and Eunsung respectfully asks that discovery opens on July 28, 2025, which corresponds to Week 5, according to the LPR, under Eunsung's proposed schedule.

In addition, contrary to Plaintiff's position that the parties have engaged in discovery in other forums without issue as to fundamental procedures, Eunsung's involvement and discovery in the other forum (International Trade Commission) was minimal because it was clear to both parties that Eunsung was going to file a motion to terminate based on a consent order. Within four months since the complaint was filed at the other forum, the investigation was stayed with respect to Eunsung, then terminated. Even in the other forum, the parties did not agree to a discovery stipulation outlining document production, translations, electronic service protocol, privilege logs, etc.

## C.   Discovery Limits on Requests for Production and Requests for Admission

### 1.   Plaintiff's Position

Plaintiff proposes that discovery in this case follow the established limits (or lack thereof) instituted by the Federal Rules of Civil Procedure. The federal and local rules do not impose any limits on the number of requests for admission and requests for productions that a party may serve. *See Sec. & Exch. Comm'n v. Rayat*, 2022 WL 1606953, at *1 (S.D.N.Y. May 19, 2022) ("Rule 36, unlike other rules, contains no limitations on the number of RFAs that may be served."); *Nycomed US Inc. v. Glenmark Generics Ltd.*, 2009 WL 10708945, at *1 (E.D.N.Y. May 12, 2009) ("[T]he Federal Rules of Civil Procedure … [do not] contain[] any numerical limitation on requests for admission or document demands."). It is Defendant's burden to show why this case requires discovery request limitations.

Defendant has not presented any reasons for imposing additional limits on the number of discovery requests and cannot justify its request. The scope of discovery is still uncertain because Defendant has yet to respond to the Complaint. Thus, imposing arbitrary limits on the number of discovery requests is unnecessary and improper. Further, numerous patent cases in this district have not included limits on discovery requests. *See, e.g.*, *SnapRays, LLC v. OnTel*

*Products Corp., et al.*, Case No. 2:16-cv-01198-CW (D. Utah Aug. 8, 2017), Dkt. 87 (ordering no limit on maximum requests for admission and production, instead stating "As set forth in the Federal Rules of Civil Procedure"); *DISH Techs. LLC et al. v. Vidgo, Inc.*, Case No. 2:23-cv-00624-HCN-CMR (D. Utah Jan. 26, 2024), Dkt. 32 (ordering "Unlimited" requests for admission and production); *Square One Choices Inc. v. Ditec Sols., LLC*, Case No. 2:23-cv-00555-HCN-DBP (D. Utah Nov. 6, 2023) (ordering "No limits" on discovery requests). Defendant cites cases where the parties jointly agreed upon lowering the discovery limits from the default. *See Young Living Essential Oils, LC v. Edens Garden Essentials*, 2:24-cv-00500-TC-CMR (D. Utah), Dkt. 22-1 at 7 (joint attorney planning meeting including limitations of discovery); *My Sweet Petunia, Inc. v. Stampin' Up! Inc*., 2-18-cv-00796 (D. Utah Jan. 4, 2019), Dkt. No. 23 at 2-3 (joint attorney planning meeting report including limitations); *Eagle View Techs., Inc. v. Nearmap US, Inc.,* 2:21-cv-00238 (D. Utah Jan. 10, 2022), Dkt. No. 55-1 at 3 (same). That is not the case here, and thus, Defendant cannot meet its burden to impose discovery limits.

### 2.   **Defendant's Position**

The parties dispute on the maximum number of Requests for Production and Requests for Admission. As an initial matter, Plaintiff's proposal of no limit on the maximum number of requests for admissions and request for production is contrary to the Court's scheduling order form which specifically includes an entry for the parties to include a number for each.

Eunsung proposes 100 for each of them, which is consistent with the Court's prior rulings for patent matters. *EagleView Techs., Inc. v. Nearmap US, Inc.,* 2:21-cv-002383 (D. Utah), Dkt. No. 56 (allowing 200 maximum requests for admissions and 100 maximum requests for production for an eight-patent case); *Young Living Essential Oils, LC v. Edens Garden*

*Essentials*, 2:24-cv-00500-TC-CMR (D. Utah), Dkt. No. 26 (allowing 25 maximum requests for admissions and 50 maximum requests for production for a one-patent case); *My Sweet Petunia, Inc. v. Stampin' Up! Inc*., 2-18-cv-00796 (D. Utah) Dkt. No 49 (allowing 100 maximum requests for admissions and 75 maximum requests for production for a three-patent case).  Given that Plaintiff is asserting six patents and the fact that all six patents-in-suit are genealogically-related to each other and share a common specification, Eunsung respectfully asks the number of requests for admissions be limited to 100, which is half of what the Court has allowed in *EagleView*, and the number of requests for production to be limited to 100 which is consistent with the Court's ruling in *EagleView*.

The cases in which Plaintiff cites for its support for no limit on the maximum number of requests for admissions and requests for production are all cases in which the court granted a motion in which both parties had agreed to have no limits or rules set forth in the Federal Rules of Civil Procedure. *See, e.g.*, *SnapRays, LLC v. OnTel Products Corp., et al.*, Case No. 2:16-cv-01198-CW (D. Utah Aug. 8, 2017), Dkt. 85 (parties agreeing to set the maximum numbers "[a]s set forth in the Federal Rules of Civil Procedure"); *DISH Techs. LLC et al. v. Vidgo, Inc.*, Case No. 2:23-cv-00624-HCN-CMR (D. Utah), Dkt. Nos. 31, 32 (order granting a stipulated motion for scheduling order where parties agreed upon an unlimited number of requests for admissions and requests for production); *Square One Choices Inc. v. Ditec Sols., LLC*, Case No. 2:23-cv-00555-HCN-DBP (D. Utah) Dkt. Nos. 54, 55 (order granting a stipulated motion for scheduling order where the parties agreed upon no limits for the maximum requests for admission and requests for production).  Here the parties have clear disagreement on the maximum number of discovery requests, and Eunsung respectfully asks that the Court order a maximum number that

has been considered appropriate in similar cases—100 for each the requests for admission and requests for production.

Dated: May 6, 2025

Respectfully submitted,

/s/   Benjamin J. Everton

**PARR BROWN GEE & LOVELESS**
D. Craig Parry

**MORGAN LEWIS BOCKIUS LLP**
Ali S. Razai
Ben J. Everton
Christian D. Boettcher

*Attorneys for Plaintiff HydraFacial LLC*

By:  /s/ *Brent O. Hatch*
Brent O. Hatch
(signed by Benjamin J. Everton with permission from April Sunyoung Park)

Brent O. Hatch (5715)
Adam M. Pace (14278)
**Hatch Law Group PC**
22 E. 100 S., Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 869-1919
hatch@hatchpc.com
pace@hatchpc.com

Lauren A. Degnan (*pro hac vice*)
Joseph V. Colaianni (*pro hac vice*)
Linhong Zhang (*pro hac vice*)
April Sunyoung Park (*pro hac vice*)
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
degnan@fr.com
colaianni@fr.com
lwzhang@fr.com
apark@fr.com

*Counsel for Defendant Eunsung Global Corp.*

# EXHIBIT A

D. Craig Parry
cparry@parrbrown.com
**PARR BROWN GEE & LOVELESS**
101 S 200 E STE 700
SALT LAKE CITY, UT 84111
(801) 532-7840

Ali S. Razai (*Pro Hac Vice*)
ali.razai@morganlewis.com
Benjamin J. Everton (*Pro Hac Vice*)
ben.everton@morganlewis.com
Christian D. Boettcher (*Pro Hac Vice*)
christian.boettcher@morganlewis.com
**MORGAN LEWIS BOCKIUS LLP**
600 Anton Blvd #1800
Costa Mesa, CA 92626
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff Hydrafacial LLC*

Brent O. Hatch (5715)
Adam M. Pace (14278)
**Hatch Law Group PC**
22 E. 100 S., Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 869-1919
hatch@hatchpc.com
pace@hatchpc.com

Lauren A. Degnan (*pro hac vice*)
Joseph V. Colaianni (*pro hac vice*)
Linhong Zhang (*pro hac vice*)
April Sunyoung Park (*pro hac vice*)
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
degnan@fr.com
colaianni@fr.com
lwzhang@fr.com
apark@fr.com

*Counsel for Defendant Eunsung Global Corp.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HYDRAFACIAL LLC, formerly known as EDGE SYSTEMS LLC, <br><br> Plaintiff, <br><br> v. <br><br> LUVO MEDICAL TECHNOLOGIES, INC., CLARION MEDICAL TECHNOLOGIES, INC., EUNSUNG GLOBAL CORP., and HEALTHCARE MARKETS, INC. doing business as POWERED BY MRP, <br><br> Defendants. | **[PROPOSED] SCHEDULING ORDER** <br><br> Case No.  2:24-cv-00587-TC <br><br> Judge: Hon. Tena Campbell <br> Judge: Hon. Jared C. Bennett |

Under the Court's minute order dated April 24, 2025, Dkt. 58, Plaintiff HydraFacial LLC, formerly known as Edge Systems LLC ("Plaintiff") and Eunsung Global Corp. ("Defendant" or "Eunsung") (collectively, the "Parties") propose the below schedule. The parties met and conferred on a proposed scheduling order on May 1, 2025. As Defendant has not yet responded to the Complaint, Dkt. 1, the parties have included dates for Defendant to respond to the Complaint. The deadlines ultimately entered by the Court may not be modified without a court order consistent with Fed. R. Civ. P. 16(b)(4) and DUCivR 83-5. Plaintiff is directed to file a proposed Post-Claim Construction Scheduling Order with the remaining case deadlines within 14 days of the Court entering a ruling on claim construction. The Court will then set trial deadlines in the Post-Claim Construction Scheduling Order or through a case management conference.

**DEADLINES ARE 11:59 P.M. ON THE DATE INDICATED UNLESS**

**EXPRESSLY STATED OTHERWISE**

## I.   PRELIMINARY MATTERS AND DISCLOSURES

| Date | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| 1. Deadline to Answer Complaint | May 22, 2025 (28 days after administrative reopening of case per Fed. R. Civ. P. 12(a)(1)(A)(i)) | June 5, 2025 (30 days after the submission of the proposed schedule) |
| 2. Deadline for Plaintiff's Accused Instrumentalities Disclosure [LPR 2.1] | May 29, 2025 [7 days after 1st answer—Day 7/Week 1] | June 30, 2025 [Week 1][1] |

[1] Here "week 1" is set to start on June 30, 2025, instead of June 12, 2025, to account for the pending petitions for inter partes review (IPR), for which decisions are due by August 25, 2025, as instructed by the Court. As explained in the joint motion, Eunsung proposes that its Non-Infringement, Ineligibility, Invalidity, and Unenforceability Contentions should be due on September 15, 2025, three weeks after August 25, 2025. Under the local rules, this deadline corresponds to "week 11." Eunsung's schedule therefore sets the dates before this deadline in accordance with cadence set forth under the local rules, which makes "week 1" June 30, 2025.

| 3.  | Deadline for Plaintiff's Rule 26(a)(1) Initial Disclosures [LPR 2.2] | June 12, 2025 [Day 21/Week 3] | July 14, 2025 [Week 3] |
|-----|----------------------------------------------------------------------|-------------------------------|------------------------|
| 4.  | Deadline for Defendant's Rule 26(a)(1) Initial Disclosures [LPR 2.2] | June 19, 2025 [Day 28/Week 4] | July 21, 2025 [Week 4] |
| 5.  | Fed. R. Civ. P. 26(f)(1) Conference[2] | May 29, 2025 [Day 7/Week 1] (per Fed. R. Civ. P. 26(a)(1)(C)) | July 28, 2025 [Week 5] Fed. R. Civ. P. 26(f)(1) Conference and Discovery Begins: [LPR 1.2, 1.3] |
| 6.  | Attorney Planning Meeting Report filed: [LPR 1.2] | May 1, 2025 (fact discovery opened on this date) | August 4, 2025 [Week 6] |
| 7.  | Deadline to submit Stipulated Protective Order and any related disputes | June 5, 2025 [Day 14/Week 2] | August 4, 2025 [Week 6] |
| 8.  | Deadline for plaintiff to serve Initial Infringement Contentions [LPR 2.3] | July 24, 2025 [Day 63/Week 9] | August 25, 2025 [Week 9] |
| 9.  | Deadline for defendant to serve Initial Non-Infringement, Ineligibility, Invalidity, and Unenforceability Contentions [LPR 2.4, 2.6] | August 7, 2025 [Day 77/Week 11] | September 15, 2025 [Week 11] |
| 10. | Parties will notify the Court regarding the status of the IPR institution decisions involving any of the asserted patents pursuant to Dkt. 58. | August 26, 2025 | August 26, 2025 |
| 11. | If no infringement claims, deadline for plaintiff to serve Initial Non-Infringement, Ineligibility, Invalidity, and Unenforceability Contentions: [LPR 2.4, 2.6] | N/A | N/A |
| 12. | Deadline to file motion to amend pleadings | September 11, 2025 [Day 112/Week 16] | October 13, 2026 [Week 16] |
| 13. | Deadline to file motion to join parties | September 11, 2025 [Day 112/Week 16] | October 13, 2026 [Week 16] |

---

[2] Parties dispute whether discovery has commenced. It is defendant's position that discovery begins on the same date as the Fed. R. Civ. P. 26(f)(1) Conference. It is plaintiff's position that discovery opened on May 1, 2025 with the parties' conference regarding the form patent scheduling order.

| 14. Deadline for Final Infringement Contentions [LPR 3.1] | December 18, 2025 [Day 210/Week 30] | January 20, 2026 [Week 30] |
|---|---|---|
| 15. Deadline for Final Ineligibility, Invalidity, and Unenforceability Contentions [LPR 3.1] | January 2, 2026 [Day 224+1/Week 32] | February 3, 2026 [Week 32] |
| 16. Deadline for Final Non-Infringement Contentions [LPR 3.1] | January 15, 2026 [Day 238/Week 34] | February 17, 2026 [Week 34] |
| 17. Deadline to serve written discovery before claim construction [Fed. R. Civ. P. 34] | January 27, 2026 [Day 250] | March 2, 2026 [30 days before the Deadline for fact discovery to close before claim construction] |
| 18. Deadline for fact discovery to close before claim construction [LPR 1.3(a)] | February 26, 2026 [Day 280/Week 40] | March 31, 2026 [Week 40] |

## II. **PROTECTIVE ORDER**

| The parties anticipate the case will involve the disclosure of information, documents, or other materials that will be designated as confidential. | Yes ☒ | No ☐ |
|---|---|---|

If the case will involve the disclosure of information, documents, or other materials that will be designated as CONFIDENTIAL, then good cause exists for the court to enter the court's Standard Protective Order (SPO) under DUCivR 26-2:

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. In particular, confidential financial information, technical information, business records, source code, and other privileged or otherwise confidential documents may be produced.

The parties will stipulate to their own Protective Order and raise any disputed issues on the Protective Order with the Court, if needed.

If a protective order is needed and the parties **are not** using the court's SPO, then the court's SPO, in effect under DUCivR 26-2, will govern until a different protective order—proposed by the parties via motion under DUCivR 7-1(a)(4)(D)—is adopted by the court.

The parties' proposed protective order should identify a process to resolve all claims of waiver of attorney-client privilege or work-product protection, whether or not the information, documents, or other materials will be designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY, and this process must be included in the proposed protective order under Fed. R. Evid. 502(d):
The parties will stipulate to this process at the time that the Protective Order is filed.

If the parties do not anticipate the case will involve the disclosure of information, documents, or the materials that will be designated as CONFIDENTIAL, the parties still should identify, in the space below, a process to resolve all claims of waiver of attorney-client privilege or work-product protection, whether or not the information, documents, or other materials will be designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY, and this process must also be included in the proposed Scheduling Order: N/A

## III. <u>FACT DISCOVERY</u>

| Date | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| Maximum Number of Depositions by Plaintiff | 10 [Fed. R. Civ. P. 30] | 10 |
| Maximum Number of Depositions by Defendant | 10 [Fed. R. Civ. P. 30] | 10 |
| Maximum number of hours for each deposition: (*unless extended by agreement of parties*) | 7 [Fed. R. Civ. P. 30] | 7 |
| Maximum interrogatories by any party to any party: | 25 [Fed. R. Civ. P. 33] | 25 |
| Maximum requests for admissions by any party to any party: | None [No limits imposed by Federal or Local rules] | 100 |
| Maximum requests for production by any party to any party: | None [No limits imposed by Federal or Local rules] | 100 |

## IV. CLAIM CONSTRUCTION DEADLINES

| Date | Plaintiff's Proposal | Defendant's Proposal |
|------|---------------------|----------------------|
| 19. Deadline for parties to exchange proposed claim terms and claim constructions for construction [LPR 4.2] | January 29, 2026 [Day 252/Week 36] | March 3, 2026 [Week 36] |
| 20. Deadline for parties to reach an agreement to submit no more than 10 terms for construction [LPR 4.2] | February 5, 2026 [Day 259/Week 37] | March 10, 2026 [Week 37] |
| 21. Deadline for parties to file and serve Cross-Briefs for Claim Construction and Joint Appendix [LPR 4.3] | March 5, 2026 [Day 287/ Week 41] | April 7, 2026 [Week 41] |
| 22. Deadline for parties to file Simultaneous Responsive Claim Construction Briefs [LPR 4.3] | April 2, 2026 [Day 315/Week 45] | May 5, 2026 [Week 45] |
| 23. Deadline for parties to file Joint Claim Construction Chart & Joint Status Report [LPR 4.3] | April 9, 2026 [Day 322/ Week 46] | May 12, 2026 [Week 46] |
| 24. Deadline for parties to file a Tutorial [LPR 4.5] | April 16, 2026 [Day 329/ Week 47] | May 19, 2026 [Week 47] |
| 25. Deadline for parties to exchange exhibits: [LPR 4.4] | TBD [Day 7 Before CCH] | TBD [Day 7 Before CCH] |
| 26. Claim Construction Hearing[3] [LPR 4.4] | TBD | TBD |

---

[3] The Parties are to file a joint motion to set the date for the Claim Construction Hearing per LPR 4.4.

**SO ORDERED** this _____ day of _____, 2025.

BY THE COURT:

_____
Hon. Tena Campbell
United States District Court Judge

# EXHIBIT B

Trials@uspto.gov
571-272-7822

Paper 17
Date: April 11, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

EUNSUNG GLOBAL CORP.,
Petitioner,

v.

HYDRAFACIAL LLC,
Patent Owner.

———————————

IPR2024-01491
Patent 11,865,287 B2

———————————

Before ERIC C. JESCHKE, CYNTHIA M. HARDMAN, and
JAMIE T. WISZ, *Administrative Patent Judges.*

WISZ, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

ORDER
Granting Patent Owner's Motion to Seal and Entering Protective Order
*37 C.F.R. §§ 42.14, 42.54*

IPR2024-01491
Patent 11,865,287 B2

## I.    INTRODUCTION

Eunsung Global Corp. ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting an *inter partes* review of claims 1–12, 14–20, 22–26, 28–37, and 39–45 of U.S. Patent No. 11,865,287 B2 (Ex. 1001, "the '287 patent"). HydraFacial LLC ("Patent Owner") filed a Preliminary Response (Paper 7, "Prelim. Resp.").  With Board authorization, Petitioner filed a Preliminary Reply (Paper 9, "Prelim. Reply"), and Patent Owner filed a Preliminary Sur-reply (Paper 12, "PO Prelim. Sur-reply") addressing 35 U.S.C. § 325(d) and Patent Owner's evidence of objective indicia of non-obviousness.  With further Board authorization, Patent Owner filed a Supplemental Brief (Paper 15, "*Fintiv* Brief"), and Petitioner filed a Supplemental Reply (Paper 16, "*Fintiv* Reply") addressing the impact of the USPTO's February 28, 2025 recission of the June 2022 memorandum titled, "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation" ("Interim *Fintiv* Procedure") on discretionary denial.

Under 35 U.S.C. § 314(a), the Board may not authorize an *inter partes* review to be instituted unless "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  After considering the briefing and the evidence of record, we exercise our discretion under 35 U.S.C. § 314(a) and deny institution of an *inter partes* review.

Additionally, we grant Patent Owner's motion to seal and enter a protective order.  *See infra* Section III.C.

IPR2024-01491
Patent 11,865,287 B2

## II.   BACKGROUND

### A.   Real Parties-in-Interest

Petitioner identifies itself, Eunsung Global Corp., as the real party-in-interest.  *See* Pet. 97.  Patent Owner identifies HydraFacial LLC and The Beauty Health Company as the real parties-in-interest.  Paper 4 (Patent Owner's Mandatory Notices), 1.

### B.   Related Matters

The parties identify the following International Trade Commission ("ITC") and district court proceedings as involving the '287 patent: *Certain Hydrodermabrasion Systems and Components Thereof*, Inv. No. 337-TA-1408 (ITC) (the "ITC proceeding"); *Certain Hydrodermabrasion Systems and Components Thereof II*, Inv. Nos. 337-TA-1416 (ITC); *HydraFacial LLC v. Luvo Medical Technologies et al.*, 2-24-cv-00587 (D. Utah) (the "district court proceeding"); *HydraFacial LLC f/k/a Edge Systems LLC v. Sinclair Pharma Limited et al.*, 2-24-cv-06250 (C.D. Cal.); *HydraFacial LLC f/k/a Edge Systems LLC v. Aesthetic Management Partners, LLC et al.*, 2-24-cv-02480 (W.D. Tenn.); *HydraFacial LLC f/k/a Edge Systems LLC v. Cartessa Aesthetics, LLC*, 2-24-cv-04253 (E.D.N.Y.); *HydraFacial LLC f/k/a Edge Systems LLC v. Medicreations LLC*, 2-24-cv-00855 (D. Nev.); and *HydraFacial LLC et al. v. eMIRAmed USA LLC et al.*, 8-24-cv-01865 (C.D. Cal.).  Pet. 97; Paper 4, 2–3.

### C.   The '287 Patent

The '287 patent is titled "Devices and Methods for Treating Skin." Ex. 1001, code (54).  In the background section, the '287 patent explains that "[d]ermabrasion refers to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece with an abrasive element that is often in the form of a burr, wheel, or disc" and that it "tends to be

3

IPR2024-01491
Patent 11,865,287 B2

painful and messy." *Id.* at 1:48–52.  The procedure "leaves the skin red and raw-looking" and "removed skin can take several months to regrow and heal." *Id.* at 1:53–55.  The '287 patent explains that a suction element can "decrease the mess caused by the process waste, such as removed skin and blood." *Id.* at 1:58–60.

As further background, the '287 patent explains that "[m]icrodermabrasion refers generally to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece emitting a stream of sand or grit." *Id.* at 1:65–67.  As an example of microdermabrasion, the '287 patent describes using a handpiece "to direct an air flow containing tiny crystals of aluminum oxide, sodium chloride, or sodium bicarbonate." *Id.* at 2:1–3.  The '287 patent also teaches that "[m]icrodermabrasion removes moisture from the skin, so the procedure is always followed by the application of moisturizing creams." *Id.* at 2:16–18.

The '287 patent discloses "an apparatus for treating skin" that "deliver[s] fluid from at least one of the plurality of fluid sources to [a] handpiece assembly." Ex. 1001, 2:26–35.  The apparatus has "a console with a user input device," a "handpiece assembly" that is "configured to treat skin," a "fluid line" that "provides fluid communication between the console and the handpiece assembly," and a "manifold system" that is "coupled to the console and controlled by the user input device, such as a computer, touchscreen, keyboard, and the like." *Id.*  "The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly." *Id.* at 2:33–35.  We reproduce Figure 1 from the '287 patent below.

IPR2024-01491
Patent 11,865,287 B2



FIG. 1

Figure 1 "illustrates a skin treatment system 10" that includes a console 12, a handpiece assembly 18 connected to the console via a line 20, and a manifold system 24 that can control the flow of treatment material from containers 26 into and through line 20. *Id.* at 5:24–30.

D. *Challenged Claims*

Petitioner challenges claims 1–12, 14–20, 22–26, 28–37, and 39–45 of the '287 patent. Pet. 1. Of the challenged claims, claims 1, 11, 22, 26, and 37 are independent. Claim 1 is illustrative of the challenged claims, and is reproduced below:

IPR2024-01491
Patent 11,865,287 B2

[1.pre] A system for treating skin, the system comprising:

[1.1] a console configured to receive a first container and at least one additional container;

[1.2] a handpiece configured to contact skin tissue of a subject; and

[1.3] a block in the console, wherein the block is:

> configured to selectively receive fluid from the first container when the first container is connected to the console;

> configured to selectively receive fluid from the at least one additional container when the at least one additional container is connected to the console; and,

> configured to selectively be in fluid communication with the handpiece through a first conduit when the handpiece is connected to the console;

[1.4] a vacuum source, wherein the console comprises the vacuum source; and

[1.5] wherein the handpiece is configured to be in fluid communication with the vacuum source through a second conduit when the handpiece is connected to the console;

[1.6] wherein when the handpiece, the first container, the at least one additional container and a waste container are each connected to the console, the first container contains a first treatment fluid, and the at least one additional container contains an additional treatment fluid,

[1.7] the handpiece is in fluid communication with the vacuum source and the waste container through the second conduit; and

[1.8] the system is configured to deliver the first treatment fluid contained in the first container and the additional treatment fluid contained in the at least one additional container to the handpiece sequentially.

Ex. 1001, 21:25–57 (annotated with bracketed labels corresponding to the labels in the Petition (*see* Pet. vi, "Listing of Claims")).

IPR2024-01491
Patent 11,865,287 B2

E.    *The Asserted Grounds of Unpatentability*

Petitioner asserts that claims 1–12, 14–20, 22–26, 28–37, and 39–45

of the '287 patent are unpatentable on the following grounds:

| Ground | Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|---|
| 1A | 1–3, 8–12, 14–16, 22, 23, 26, 28, 29, 34–37, 39, 40, 45 | 103 | Karasiuk,[1] Palmer[2] |
| 1B | 1–10, 12, 17–20, 22–26, 28–36, 40–44 | 103 | Karasiuk, Palmer, Trueba[3] |
| 2A | 1–3, 8–12, 14–16, 22, 23, 26, 28, 29, 34–37, 39, 40, 45 | 103 | Greenberg[4] |
| 2B | 1–10, 12, 17–20, 22–26, 28–36, 40–44 | 103 | Greenberg, Trueba |

Petitioner also relies on the Declaration of Eric Simon (Ex. 1003).

Patent Owner relies on the Declarations of Karl R. Leinsing (Ex. 2001) and

Elliot Duboys (Ex. 2003).

---

[1] Karasiuk, US 2003/0212415 A1, published Nov. 13, 2003 (Ex. 1004, "Karasiuk").

[2] Palmer et al., U.S. Patent No. 5,199,604, issued Apr. 6, 1993 (Ex. 1005, "Palmer").

[3] Trueba, U.S. Patent No. 6,684,880, issued Feb. 3, 2004 (Ex. 1008, "Trueba").

[4] Greenberg, US 2003/0093089 A1, published May 15, 2003 (Ex. 1006, "Greenberg").

IPR2024-01491
Patent 11,865,287 B2

## III.    ANALYSIS

### A.    Discretionary Denial Under § 314(a)

Institution of an *inter partes* review ("IPR") under 35 U.S.C. § 314(a) is discretionary.  *See* 35 U.S.C. § 314(a) (stating "[t]he Director may not authorize an *inter partes* review to be instituted unless the Director determines that the information presented in the petition . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" (emphasis added)); *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion."); *SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 366 (2018) ("[Section] 314(a) invests the Director with discretion on the question whether to institute review . . . ." (emphasis omitted)); *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is permitted, but never compelled, to institute an IPR proceeding.").

Patent Owner asserted the '287 patent against Petitioner in both the district court proceeding and the ITC proceeding.[5]  *Fintiv* Brief 1, 2, 4; *Fintiv* Reply 1–3.  The district court proceeding has been stayed pending resolution of the ITC proceeding.  Ex. 1101, 2.  Petitioner entered a consent order on January 21, 2025 and withdrew from the ITC proceeding.  *Fintiv* Brief 4.  Patent Owner alleges that Petitioner's exclusive distributor, Cartessa Aesthetics, LLC ("Cartessa"), remains in the ITC proceeding.  *Id.* at 1, 2, 4.

---

[5] *HydraFacial LLC v. Luvo Medical Technologies et al.*, 2-24-cv-00587 (D. Utah); *Certain Hydrodermabrasion Systems and Components Thereof*, Inv. No. 337-TA-1408 (ITC).

IPR2024-01491
Patent 11,865,287 B2

Patent Owner argues that we should exercise our discretion to deny institution in this case under 35 U.S.C. § 314(a) because the pending investigation at the ITC will conclude before a final written decision will issue in this case. *See Fintiv* Brief 1–2 (citing *Apple, Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) ("*Fintiv*")). According to Patent Owner, with the rescission of the Interim *Fintiv* Procedure, the Board has authority to discretionarily deny institution in light of a parallel ITC proceeding. *Id.* at 1. Patent Owner argues that the ITC proceeding "will assess the '287 patent's validity based on the exact same prior art and arguments that [Petitioner] asserted in this IPR." *Id.* According to Patent Owner, "the *Fintiv* factors overwhelmingly favor denying institution," and in order to "conserve Board and party resources and avoid potentially conflicting rulings, the Board should exercise discretion and deny institution." *Id.* at 1–2.

Petitioner argues that it is no longer a party to the ITC proceeding and that *Fintiv* favors institution. *Fintiv* Reply 1, 2. Petitioner also contends that *Fintiv* should not apply in the case of parallel ITC proceedings "because invalidity rulings at the ITC carry no preclusive effect on other forums." *Id.* at 1 (emphasis omitted).

When determining whether to exercise discretion to deny institution in view of a parallel litigation, we consider the following factors:

> 1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;

> 2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;

> 3. investment in the parallel proceeding by the court and the parties;

9

IPR2024-01491
Patent 11,865,287 B2

      4. overlap between issues raised in the petition and in the parallel proceeding;

      5. whether the petitioner and the defendant in the parallel proceeding are the same party; and

      6. other circumstances that impact the Board's exercise of discretion, including the merits.

*Fintiv*, Paper 11 at 5–6.  According to *Fintiv*, these factors relate to "efficiency, fairness, and the merits" and require the Board to take "a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review."  *Id.* at 6.

      As an initial matter, we address Petitioner's argument that *Fintiv* should not apply in the case of parallel ITC proceedings.  *See Fintiv* Reply 1–2.  On March 24, 2025, Chief Administrative Patent Judge Scott R. Boalick issued a memorandum titled, "Guidance on USPTO's Recission of 'Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation'" ("March 2025 Guidance Memo"),[6] which provides guidance to members of the PTAB in light of the Office's February 28, 2025 recission of the Interim *Fintiv* Procedure.  The March 2025 Guidance Memo clarifies that "the Board will apply the *Fintiv* factors when there is a parallel proceeding at the [ITC]" because, "[a]s the *Fintiv* decision explains, although an ITC final invalidity determination does not have preclusive effect, it is difficult as a practical matter to assert patent claims that the ITC has determined are invalid."  March 2025 Guidance Memo, 2.  Therefore, we consider the ITC proceeding when applying the *Fintiv* factors, as set forth below.

---

[6] Available at https://www.uspto.gov/sites/default/files/documents/ guidance_memo_on_interim_procedure_recission_20250324.pdf.

IPR2024-01491
Patent 11,865,287 B2

### 1.    Likelihood of a Stay

The district court has stayed its proceeding until the conclusion of the ITC proceeding and any appeal.[7]  Ex. 1101, 2.  Petitioner indicates that the ITC proceeding was stayed as to Petitioner prior to their termination from the case.  *Fintiv* Reply 2 (citing Ex. 1106).  However, the ITC proceeding is not stayed as to the remaining parties and a stay has not been requested. *Fintiv* Brief 2.

There is no evidence that the pending ITC proceeding is likely to be stayed.  Indeed, a stay seems unlikely given that the trial in the ITC proceeding began on April 9, 2025.  *Id.*  Accordingly, despite the stay of the district court litigation, this factor weighs in favor of exercising discretion to deny institution.

### 2.    Proximity of Trial Date to Projected Statutory Deadline

Patent Owner argues that the ITC trial began on April 9, 2025 and is expected to conclude on April 15, 2025.  *Fintiv* Brief 2.  According to Patent Owner, the Administrative Law Judge ("ALJ") in the ITC must issue her decision on validity by August 17, 2025, and the Commission will issue the final determination by December 17, 2025, which dates are approximately eight months and four months, respectively, before the Board's projected final written decision deadline if a trial were instituted.  *Id.* (citing Ex. 2048, vi.).

Petitioner argues that the district court case is stayed with no trial date set.  *Fintiv* Reply 2.  Although Petitioner acknowledges that, in the ITC

---

[7] The district court case was initially stayed, at least in part, due to the mandatory stay provision of 28 U.S.C. § 1659, which requires a stay of district court litigation pending the resolution of an ITC proceeding.  *See* Ex. 1101, 2; *Fintiv*, Paper 11 at 8.

IPR2024-01491
Patent 11,865,287 B2

proceeding, an initial determination is due in August 2025 and a final determination is due in December 2025, Petitioner notes that there will then be another 60 days for presidential review, and argues that "[e]xtensions of these due dates are possible and, if an exclusion order is issued, litigation before Customs would be an option" such that "the Board's statutory deadline (here April 2026) compares favorably." *Id.* (citing Ex. 1107; Ex. 1108).

The March 2025 Guidance Memo explains that, "instituting an IPR or PGR where the ITC has set a target date for completing its investigation (i.e., the full Commission's final determination) to occur earlier than the Board's deadline to issue a final written decision in a challenge involving the same patent claims means that multiple tribunals may be adjudicating validity at the same time, which may increase duplication and expenses for the parties and the tribunals." March 2025 Guidance Memo, 2. The Memo further explains that, "[t]hus, the Board is more likely to deny institution where the ITC's projected final determination date is earlier than the Board's deadline to issue a final written decision." *Id.* In this case, despite the stay of the district court case, the ITC is scheduled to reach a final determination in December 2025, several months before our final written decision deadline of April 2026. This factor weighs in favor of exercising discretion to deny institution.

> 3.    *Investment in the Parallel Proceeding*

Patent Owner argues that "[t]he entirety of the ITC proceeding— including the parties' investment in preparing and presenting arguments at trial, the ALJ's investment in the decision, and the Commission's investment in reaching its decision—will be completed before the Board issues a FWD." *Fintiv* Brief 2–3.

IPR2024-01491
Patent 11,865,287 B2

Petitioner argues that no investment has occurred in the district court case and, because the ITC proceeding was stayed as to Petitioner prior to Petitioner's withdrawal, limited investment related to Petitioner occurred before the ITC. *Fintiv* Reply 3 (citing Ex. 1106; Ex. 1107, 17; Ex. 1111, 7). Petitioner also argues that it diligently filed its Petition less than 3 months after the ITC investigation was instituted. *Id.* at 4.

It is undisputed that the ITC and Patent Owner have made substantial investments in the ITC proceeding, in view of the trial scheduled for April 9, 2025. Although Petitioner was diligent in filing its Petition less than 3 months after the ITC investigation was instituted, this diligence does not outweigh the substantial investment made in the ITC proceeding. Thus, this factor weighs in favor of exercising discretion to deny institution.

### 4.   Overlap of Issues

Patent Owner argues that this factor favors denying institution because Petitioner "seeks to relitigate the same issues on the same claims, relying on the same prior art and invalidity grounds as those in the ITC proceeding." *Fintiv* Brief 3. Patent Owner also points out that the ITC invalidity contentions incorporate by reference the Petition and copy many of its annotated figures. *Id.* at 3–4 (citing Ex. 2049, 4, 14–18, 43–57).

If the Board institutes review, Petitioner agrees to a *Sotera* stipulation in the district court litigation, which, Petitioner argues, strongly favors institution. *Fintiv* Reply 4; *see Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 at 18–19 (PTAB Dec. 1, 2020) (precedential as to § II.A). Petitioner also argues that, in order to demonstrate overlap, Patent Owner submitted excerpts from a supplemental validity response filed in October 2024, "which does not confirm the grounds that will actually be presented at the ITC hearing." *Id.* Petitioner further alleges that the Petition

IPR2024-01491
Patent 11,865,287 B2

challenges 41 claims, while less than half of those claims are being asserted at the ITC, with further reductions likely. *Id.* According to Petitioner, "[b]ecause the petition covers at least 21 claims that will not be addressed by the ITC, institution is warranted." *Id.*

Petitioner alleges that the Petition covers claims that are not being addressed in the ITC; however, Petitioner does not cite to anything to support this contention and the only evidence of record shows the same claims being asserted in the ITC as being challenged in the Petition. *See* Ex. 1109, 7; Ex. 2049, 1. Further, even if fewer claims are pursued in the ITC proceeding than in the IPR, if the art and arguments substantially overlap, there would still be a substantial duplication of efforts. To that point, the only evidence of record setting forth the invalidity arguments being made at the ITC indicates that the same prior art is being asserted, resulting in substantial overlap with the art and arguments being asserted in the Petition (including an incorporation by reference of the IPR Petition in the ITC proceeding). *See* Ex. 2049, 4, 14–18, 43–57.

As stated in *Fintiv*, "if the petition includes the same or substantially the same claims, grounds, arguments, and evidence as presented in the parallel proceeding, this fact has favored denial" because "concerns of inefficiency and the possibility of conflicting decisions [are] particularly strong." *Fintiv*, Paper 11 at 12. Although Petitioner offers a *Sotera* stipulation in the district court case, this stipulation does not alleviate the overlap between the Petition and the co-pending ITC proceeding. Thus, this factor weighs in favor of exercising discretion to deny institution.

### 5. *Identity of Parties*

Petitioner is a party to the district court litigation but is not currently a party to the ITC proceeding, having withdrawn by entering a consent order

IPR2024-01491
Patent 11,865,287 B2

on January 21, 2025. *Fintiv* Brief 4; Ex. 1109. Patent Owner contends that, despite Petitioner's withdrawal from the ITC proceeding, Petitioner's exclusive distributor, Cartessa, continues to assert the same invalidity grounds as those presented in the Petition. *Fintiv* Brief 4. Patent Owner asserts that, "[g]iven the close relationship between [Petitioner] and Cartessa in sourcing and selling of the allegedly infringing products—and their shared opportunity to litigate validity—Cartessa effectively stands in for [Petitioner] in the ITC proceeding" and "should be treated functionally as the same party." *Id.* Patent Owner also cites to *Fintiv*'s statement that, "[e]ven when a petitioner is unrelated to a defendant, . . . if the issues are the same as, or substantially similar to, those already or about to be litigated, or other circumstances weigh against redoing the work of another tribunal, the Board may, nonetheless, exercise the authority to deny institution." *Id.* (citing *Fintiv*, Paper 11 at 14).

Petitioner argues that it was terminated from the ITC proceeding and that Patent Owner did not submit any evidence to substantiate the argument that Petitioner and Cartessa have a close relationship. *Fintiv* Reply 4. Petitioner further argues that Cartessa has no involvement in the IPR and that, since being terminated from the ITC investigation, Petitioner has not been involved in Cartessa's litigation with Patent Owner. *Id.* at 4–5. According to Petitioner, "[Petitioner] and Cartessa are represented by different counsel and neither party controls or funds the other" and Petitioner "cannot direct or control Cartessa's invalidity case at the ITC, nor can Cartessa direct or control [Petitioner's] arguments here." *Id.* at 5. Petitioner concludes that "the parties do not have a significant relationship for purposes of discretionary denial and Cartessa's presentation of invalidity before the ITC does not represent [Petitioner's] interest." *Id.*

IPR2024-01491
Patent 11,865,287 B2

Petitioner does not deny that it has a business relationship with Cartessa, and it appears to be undisputed that Cartessa is a U.S. distributor of Petitioner's allegedly infringing product. *See* Ex. 3001, 13. However, given that Petitioner is not itself currently a party to the ITC litigation, we find that this factor neither weighs in favor of or against discretionary denial.

### 6. *Other Circumstances, Including the Merits*

The parties dispute whether the merits favor institution or discretionary denial. *Fintiv* Brief 4–5; *Fintiv* Reply 5. Patent Owner also argues that "[f]airness considerations further support denying institution" because the IPR "imposes an undue burden on [Patent Owner], which pursued enforcement through the ITC, where [Petitioner] was a party until just seven weeks ago." *Fintiv* Brief 5. According to Patent Owner, Petitioner "was afforded a full and fair opportunity to present its case at the ITC alongside its exclusive distributor but chose to withdraw" and any assertion that Petitioner would be prejudiced by discretionary denial "is flawed" because Petitioner voluntarily exited the ITC proceeding and "should not be rewarded for procedural gamesmanship." *Id.*

Petitioner argues that "efficient use of Board resources favors institution" because Petitioner has filed IPRs for three other patents asserted against it in district court that use the same prior art as this IPR. *Fintiv* Reply 5. According to Petitioner, "[i]t would be most efficient for the Board to consider these IPRs together, which could efficiently resolve several stayed litigations consistent with the goals of the AIA." *Id.*

We find that Petitioner's obviousness challenges meet the standard for institution. We also will not speculate as to whether the other three petitions referenced by Petitioner will be instituted. Taken together with the other

IPR2024-01491
Patent 11,865,287 B2

considerations raised by the parties, on balance, we find this factor neither weighs in favor of nor against discretionary denial.

### 7.    *Holistic Assessment of Factors*

Because the analysis is fact-driven, no single factor is determinative of whether we exercise our discretion and deny institution under 35 U.S.C. § 314(a).  Given the advanced stage of litigation in the ITC and the substantial overlap of issues, after weighing all of the factors and taking a holistic view of the relevant circumstances of this proceeding, we determine that instituting an *inter partes* review would be an inefficient use of the Board's and parties' resources, and we exercise discretion to deny institution under 35 U.S.C. § 314(a).

### B.    *Discretionary Denial under 35 U.S.C. § 325(d)*

Patent Owner asserts that we should deny the Petition under 35 U.S.C. § 325(d) because the Petition presents substantially the same art and arguments that the Office previously analyzed and fails to show that the Office erred during prosecution.  *See* Prelim. Resp. 58–68.  Because we exercise discretion to deny institution under 35 U.S.C. § 314(a) for the reasons discussed above, we do not need to reach Patent Owner's argument regarding denial under § 325(d).

### C.    *Patent Owner's Motion to Seal and Entry of Protective Order*

Patent Owner filed a combined Motion to Seal and for Entry of Protective Order (Paper 8, "Mot."), requesting entry of a modified version of the Default Protective Order (Ex. 2024) and seeking to seal Exhibits 2009 and 2010 as well as portions of Patent Owner's Preliminary Response discussing Patent Owner's allegedly confidential information.  Patent Owner indicates that the Motion is "partially opposed" by Petitioner; however, Petitioner did not file any opposition.  Mot. 2.

IPR2024-01491
Patent 11,865,287 B2

Patent Owner explains that the information it seeks to seal consists of "confidential financial data, such as sales revenue for numerous products" and, "[i]f such information were publicly accessible, [Patent Owner's] competitors could exploit it to obtain an unfair competitive advantage." Mot. 2.

The standard for granting a motion to seal is "for good cause." 37 C.F.R. § 42.54(a). The moving party bears the burden to show entitlement to the requested relief and to establish that the information sought to be sealed is confidential information. *Id.* § 42.20(c). The "good cause" standard for granting a motion to seal reflects the strong public policy for making all information in an *inter partes* review open to the public. *Argentum Pharms. LLC v. Alcon Rsch., Ltd.*, IPR2017-01053, Paper 27 at 3 (PTAB Jan. 19, 2018) (informative). When assessing whether the standard has been met, we may consider whether the information at issue is truly confidential, whether harm would result upon public disclosure, and whether the interest in maintaining confidentiality as to the information outweighs the strong public interest in an open record. *Id.* at 3–4.

We have reviewed the documents at issue, and we agree with Patent Owner that they reflect confidential financial data, which meets the criteria set forth above. We find that Patent Owner's public filing of its redacted Patent Owner Preliminary Response (Paper 7) and redacted Savsani Declaration (Ex. 2009) strikes the right balance "between the public's interest in maintaining a complete and understandable file history and the parties' interest in protecting truly sensitive information." Consolidated Trial Practice Guide (Nov. 2019),[8] 19. Further, the general nature of Patent

---

[8] Available at https://www.uspto.gov/TrialPracticeGuideConsolidated.

IPR2024-01491
Patent 11,865,287 B2

Owner's reliance on the sealed exhibits is discernable from the public version of the Patent Owner Preliminary Response. *See generally* Paper 7.

Additionally, Patent Owner requests that we enter a modified version of the Default Protective Order (Ex. 2024). Mot. 2, 6–8. Patent Owner indicates that the Modified Protective Order "provide[s] protection similar to the Confidential Business Information designation in a protective order entered in a pending ITC Investigation to which [Petitioner] was a party." *Id.* at 2. Petitioner did not file an opposition to the Modified Protective Order.

For the reasons noted above, Patent Owner's Motion to Seal and for Entry of Protective Order is *granted*.

## IV. CONCLUSION

For the forgoing reasons, we do not institute *inter partes* review, and we grant Patent Owner's Motion to Seal and for Entry of Protective Order.

## V. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is *denied* as to all challenged claims of the '287 patent;

FURTHER ORDERED that no *inter partes* review is instituted; and

FURTHER ORDERED that Patent Owner's Motion to Seal and for Entry of Protective Order is *granted*.

IPR2024-01491
Patent 11,865,287 B2

FOR PETITIONER:

Jeremy Monaldo
Sangki Park
Jja Zhu
FISH & RICHARDSON P.C.
jjm@fr.com
spark@fr.com
jzhu@fr.com


FOR PATENT OWNER:

Ali Razai
Benjamin Everton
Benjamin Anger
MORGAN, LEWIS & BOCKIUS LLP
Ali.razai@morganlewis.com
Ben.everton@morganlewis.com
Ben.anger@morganlewis.com


Craig Summers
KNOBBE, MARTENS, OLSON & BEAR, LLP
2css@knobbe.com